IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| ROBERT A. BYRD | § | |
| v. | § | CIVIL ACTION NO. 6:14cv986 |
| SGT. HARRELL, ET AL. | § | |

**MEMORANDUM ADOPTING REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND ENTERING FINAL JUDGMENT**

The Plaintiff Robert Byrd, an inmate of the Texas Department of Criminal Justice, Correctional Institutions Division proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights. This Court referred the case to the United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges. The named Defendants are Sgt. Tony Harrell, Region II Director Kelli Ward, and a lieutenant named Black, whom Byrd identifies as the supervisor of the use of force team.

**I. Background**

Byrd alleged that in May of 2014, an officer named Shinault used force on him, tore up his legal books, and stole his Qu'ran and prayer rug. He asserted that Shinault and his "boys," including Harrell, have been threatening him because Byrd is white and Muslim.

Byrd stated that he filed grievances concerning the harassment. His Step Two grievance was answered by Kelli Ward, who advised him that Shinault had been disciplined but that the allegations of threats from Shinault were unfounded.

Four days after receiving this Step Two response, Byrd stated that Harrell and other officers beat up an inmate named Howard Carroll. Byrd threw water on an officer named Johnson in order to get a ranking officer to come to the wing and get medical help for Carroll. Instead, Harrell came

1

to Byrd's cell and gassed him. According to Byrd, Harrell then ran a five man team into Byrd's cell and beat him with a riot baton, even after Byrd had been subdued. Byrd asserted that he suffered a broken arm. The Office of the Inspector General charged him with having a knife when he came out of his cell, but Byrd maintains that this was not true. He claimed that he was not supposed to be assaulted at all because he was in a secure cell in administrative segregation, and should have only received a disciplinary case for throwing water on Johnson.

Byrd further stated that Lt. Black was the main supervisor and authorized the use of the riot baton, and that Black did not order Harrell to stop beating Byrd. He claimed that the use of force was undertaken because of his religious beliefs and because he used the grievance system to get Officer Shinault in trouble.

## II. The Defendants' Motion for Summary Judgment

In their answer, the Defendants Harrell and Ward stated that personnel records showed no record of a lieutenant named Black working at the Coffield Unit. Harrell and Ward also filed a motion for summary judgment asserting that Byrd attacked the use of force team by rushing at them as the officers tried to enter his cell after exhausting all non-violent means to extract him. The Defendants claimed that Byrd carried "a sharpened improvised weapon." They also argued that Byrd's claim against Ward is that she did not respond to the Step Two grievance in the manner in which Byrd thought appropriate, which is not a constitutional violation.

## III. Byrd's Response to the Motion

In his response, Byrd points out that a portion of the use of force report was signed by a lieutenant named Michael Black, which he says shows that the Defendants were not telling the truth when they stated that there was no Lt. Black at the Coffield Unit. He also attaches a report by a use of force administrative monitor named Evelyn Jenkins which states that the use of force by Harrell appeared to be excessive and that the camera operator's claim of dropping the camera was not true. Byrd asserts that according to the video, he had nothing in his hands when he came out of the cell

and that he was "clearly scared and trying to get away from the team." However, Byrd notes that the video went out of focus and accuses the Attorney General of concealing other video evidence.

Byrd also states that the photograph of the alleged weapon is dated July 13, 2014, but the incident did not take place until July 15. He claims that statements in the use of force report by other members of the team, Officers Sterling, Hanson, and Dehart, did not mention a weapon. Byrd also maintains that Lt. Harrell claimed that he recovered the weapon, while Officer Hanson said he recovered it and gave to Harrell, while Officer Henderson said that he saw Harrell recover the weapon and give it to Henderson.

According to Byrd, he filed grievances after the May incident with Shinault but nothing was done. He claims Ward ignored his pleas for help because he did not identify the officers, but Byrd states that he would have identified them if he had known who they were. He states that Ward could have investigated and discovered the identity of the officers. Byrd further asserts that Shinault resigned on July 14, 2014, and was found guilty of excessive force four days later; nonetheless, he claims that Shinault has now been rehired and is a sergeant at the Coffield Unit.

## IV. The Report of the Magistrate Judge

After review of the pleadings and the summary judgment evidence, including videotapes of the incident, the Magistrate Judge issued a Report recommending that the motion for summary judgment be granted. The Magistrate Judge determined that the force used was undertaken in a good faith effort to restore discipline rather than maliciously and sadistically for the very purpose of causing harm. The Magistrate Judge concluded that Byrd's retaliation claim lacked merit and that Byrd's claim against Ward did not set out a constitutional claim. The Magistrate Judge also determined that Harrell and Ward were entitled to qualified immunity.

With regard to Lt. Black, who did not answer the lawsuit, the Magistrate Judge stated that parties not joining in a successful motion for summary judgment are nonetheless entitled to benefit from that motion. *Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001). This is because where a defending party establishes that a plaintiff has no cause of action, the defense generally also inures

3

to the benefit of a defaulting defendant. *Id.*; *see also Armenta v. Pryor*, civil action no. 5:06cv76, 2009 WL 331876 (E.D.Tex., February 9, 2009, *aff'd* 377 F.App'x 413, 2010 WL 1849278 (5th Cir., May 10, 2010). In this case, the Magistrate Judge stated that the grant of summary judgment inured to Black's benefit. Furthermore, Byrd accused Black in effect of supervisory liability for allegedly overseeing the use of force team, but the Magistrate Judge determined that without primary liability, there can be no supervisor liability. *Gibbs v. King*, 779 F.2d 1040, 1046 n.6 (5th Cir.), *cert. denied* 476 U.S. 1117 (1986). Nor can Byrd show Black can be liable on a theory of failure to intervene because such a claim requires that the force used on the individual be unconstitutionally excessive, which Byrd failed to do. Thus, the Magistrate Judge recommended that Black be dismissed from the lawsuit as well.

**V. Byrd's Objections**

In his objections, Byrd first complains that security officers broke his arm and did not get him care for nine days. He also complains that the chemical agents were left on him and in his cell for days, burning him, despite his repeated requests to remove them.

The videotape and the medical records in the use of force report show that Byrd was taken to the infirmary immediately after the incident occurred. He was seen and treated by medical personnel, including receiving a splint for his arm. Shortly after Byrd arrived in the infirmary, he told the nurse "I gotta get the [stuff] out of my eyes," and the nurse wiped his eyes and face. A few minutes later, she again wiped off his eyes and face. He made no other complaints to the medical personnel about chemical agents burning him.

This Court has previously stated as follows:

> The effects of pepper spray generally last from 20 to 90 minutes. *See* http://www.peppersprayinformation.com. No special decontamination protocols are required for OC pepper spray because it is biodegradable, and will not persist on clothing or the affected areas. *See* 'Evaluation of Pepper Spray,' National Institute of Justice Research in Brief, February 1997. The Court notes that in a criminal case, the Third Circuit reversed a district court's determination that use of a pepper spray by a bank robber constitutes "use of a dangerous weapon" because the effects of the spray lasted only 10 to 15 minutes. *United States v. Harris,* 44 F.3d 1206, 1214 (3rd Cir.1995).

*Clay v. Stacks*, civil action no. 9:04cv72, 2006 U.S. Dist. LEXIS 14146, 2006 WL 688999 (E.D. Tex., March 15, 2006). In a footnote, the Court cited *Wagner v. Bay City, Texas,* 227 F.3d 316, 319 n. 1 (5th Cir.2000), as stating that decontamination from pepper spray "consists primarily of flushing the eyes with water."

Byrd has not shown that he lacked access to water in his cell with which he could wash the pepper spray off of his body or wipe down his cell. Nor has he shown that the Defendants were deliberately indifferent to his safety, in light of the fact that the effects of pepper spray normally wear off in about an hour and a half. *See Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (to act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health or safety; the official must both know of facts from which the inference could be drawn that a substantial risk of serious harm and exists and he must also draw the inference).

Byrd does not allege that he suffered any harm beyond discomfort as a result of his exposure to the chemical agent. In *Bradshaw v. Unknown Lieutenant*, 48 F.App'x 106, 2002 U.S. App. LEXIS 19477, 2002 WL 31017404 (5th Cir., August 21, 2002), a prisoner sprayed with mace suffered burning eyes and skin for 24 hours, blurred vision, nose and throat irritation, blistering of skin, and a rapid heartbeat. The Fifth Circuit determined that these injuries were *de minimis*. Byrd offers nothing to suggest that the Defendants were aware of an excessive risk to his health or safety, or that they actually drew this inference. His objection on this point is without merit.

Byrd next insists that there is a Lt. Black at the Coffield Unit, even though the Defendants stated in their answer that personnel records did not show such a person. The Magistrate Judge carefully analyzed the claims against Black and determined that these were without merit. Even if the Defendants were mistaken in their assertion, Byrd has failed to show that the Magistrate Judge erred. This objection is without merit.

Byrd states that the doctor told him on camera that his arm was broken. He was put back in his cell and X-rays were done the next day which confirmed the break. The following day, Byrd

states that he was transferred to the Estelle High Security Unit, and the day after that, he was sent to John Sealy Hospital in Galveston.[1] He complains that John Sealy Hospital has no emergency room for prisoners and he had to wait until July 23, 2014, eight days after the incident, for surgery.

Although Byrd argues that he should have been taken to the emergency room at the local hospital in Palestine, he fails to show that the treatment he received amounted to deliberate indifference. By Byrd's own accounting, he received X-rays the day after his injury, was taken to a hospital in Galveston, and had surgery eight days after his injury.

In order to prevail on a claim of deliberate indifference to his serious medical needs, Byrd must show that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. *Domino v. TDCJ-ID*, 239 F.3d 752, 756 (5th Cir. 2001); *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999). He offers nothing to suggest that an eight-day wait for surgery is unusual or even out of the ordinary, much less indicative of deliberate indifference to his serious medical needs.

According to the American Academy of Orthopedic Surgeons, a physician treating a broken arm may recommend waiting several days before surgery for the swelling to go down and for stretched skin to recover. *See* **http://orthoinfo.aaos.org/topic.cfm?topic=A00584**. None of the Defendants named in Byrd's lawsuit had any control over his medical care, and Byrd has failed to show any deliberate indifference even if the Defendants did have such control. This objection is without merit.

Byrd goes on to point out that he is only complaining about Sgt. Harrell, not the other members of the use of force team. He maintains that he only threw water on Johnson, with whom he says he got along, in order to get help for Carroll. Byrd states that Harrell said he saw Byrd in his cell with a knife, but the surveillance video shows that Harrell never came to the door and saw

---

[1] The Estelle High Security Unit also has a regional medical facility. *See* **http://www.tdcj.state.tx.us/unit_directory/e2.html.**

Byrd with a knife, nor did Harrell ever tell Byrd to give it to him. He contends that the video footage never shows a knife in his hands, nor does it show an officer picking up a knife.

The Magistrate Judge accepted Byrd's denial as true and presumed for purposes of the Report that Byrd did not have a weapon. Byrd concedes that he threw water on Officer Johnson and the video shows him repeatedly refusing to comply with orders. The Magistrate Judge correctly determined that even assuming Byrd did not have a weapon, the use of force was done in a good faith effort to restore discipline rather than maliciously and sadistically for the very purpose of causing harm. *Minix v. Blevins*, civil action no. 6:06cv306, 2007 WL 1217883 (E.D.Tex., April 23, 2007) (use of chemical agents on prisoner locked in his cell who was refusing to comply with orders did not violate the Constitution), *citing Clemmons v. Greggs*, 509 F.2d 1338, 1340 (5th Cir. 1975) *and Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1984). Byrd does not have the right to pick and choose what prison rules to obey. *Minix*, 2007 WL 1217883 at *28; *Meadows v. Gibson*, 855 F.Supp. 223, 225 (W.D.Tenn. 1994). This objection is without merit.

Byrd goes on to complain that he had previously notified prison officials that his life was in danger from officers and he was scared to come out of his cell. He states that officers had been threatening to kill him for getting Shinault in trouble. Byrd states that the cells are very small and officers have killed prisoners inside of them, so his best chance was to get out onto the run where there are surveillance cameras. He denies exiting his cell in an aggressive manner, but states that he was "scared" and trying to get out of the cell. Byrd also denies swinging his fist at the guards, although he admits that he did put his right hand on an officer's shoulder and pushed him.

Byrd asserts that "there is no coming out peacefully," saying that he was being beat, kicked, and choked. He also claimed that he was told he was going to die. Byrd states that according to the video footage, five large officers held him while Harrell beat him. He argues that there was no need for this application of force and claims that he lost consciousness during the incident.

Byrd asserts that the Magistrate Judge justified the use of force by noting that Byrd had multiple opportunities to comply. He maintains that Evelyn Jenkins was stating facts, not simply relying on TDCJ standards, and denies that he was fighting the officers, claiming that he was just "pushing away."

The Magistrate Judge accurately recounted the contents of the videos. Byrd had assaulted at least one officer by throwing water earlier that same day. He was given several opportunities to comply with orders before the chemical agents were applied but refused, even telling Sgt. Harrell "no" when asked if he would cooperate. When the cell door was opened, the video shows that Byrd rushed out at the officers. His actions necessitated the use of force which ensued. Byrd's objections in this regard are without merit.

According to Byrd, the Magistrate Judge stated that the claim against Ward was frivolous because the fact that Byrd did not get the response he wanted on his grievance was not a reason to sue. However, Byrd asserts that the Magistrate Judge did not investigate whether or not the answer which Byrd received from Ward was justified.

Byrd asserts that his Step Two grievance told the authorities that his life was in danger by officers threatening to kill him. Ward failed to investigate who the other officers were, but simply asked Shinault if he had threatened Byrd. Byrd states that he did not say that Shinault was threatening him and that no investigation was done to find out who was. Shinault resigned on July 14 and Byrd claims that Shinault's fellow officers showed up the next day to make good on the threats. Byrd maintains that Ward did nothing to help him.

The Step One grievance filed by Byrd complains that Shinault assaulted him with the slot-key bar. After Byrd returned from the medical department, he discovered that Shinault had destroyed his property. On May 14, Shinault threatened to kill Byrd if Byrd sued him. The response to this grievance stated that a copy of the grievance had been placed in the use of force packet for later review.

Byrd's Step Two grievance appeal states that "the officers (plural)" are still threatening him and that nothing is being done to protect him. He states that he feels he will have to strike first in order to protect himself and that two days ago, there was a "cat turd" in his lunch tray. He adds that he will not leave his cell during the daytime, but he will take matters into his own hands. Byrd states "keep pushing me till I kill one of these fools." This grievance appeal does not identify any particular officers.

The response to the grievance appeal, signed by Kelli Ward, states that there is no tangible evidence to support his allegations of threats by Shinault and that a major use of force has been documented [with regard to the May incident between Byrd and Shinault]. Byrd's concerns have been noted and any issues of staff misconduct will be addressed in accordance with PD-22 General Rules of Conduct and Disciplinary Action Guidelines for Employees. There was insufficient evidence to substantiate his claim that staff was responsible for alleged damage to his property.

The Magistrate Judge correctly determined that the fact Ward did not take such action on Byrd's grievance as Byrd thought appropriate did not set out a constitutional claim. The Fifth Circuit has held that inmates do not have a constitutionally protected liberty interest in having grievances resolved to their satisfaction and there is no violation of due process when prison officials fail to do so. *Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005); *see also Edmond v. Martin*, 100 F.3d 952, 1996 U.S. App. LEXIS 29268, 1996 WL 625331 (5th Cir., Oct. 2, 1996) (prisoner's claim a defendant "failed to investigate and denied his grievance" raises no constitutional issue); *Thomas v. Lensing*, 31 F.App'x 153, 2001 U.S. App. LEXIS 28101, 2001 WL 1747900 (5th Cir., December 11, 2001) (same).

Nor has Byrd set out a viable failure to protect claim. In order to prevail on such a claim, the plaintiff must show that he was incarcerated under conditions posing a substantial risk of serious harm and that the prison officials were deliberately indifferent to his need for protection. *Jones v. Greninger*, 188 F.3d 322, 326 (5th Cir. 1999). As stated above, deliberate indifference requires a showing that the prison official knew of and disregarded an excessive risk to inmate health or safety.

*Farmer*, 511 U.S. at 834. In order to survive summary judgment, the prisoner must come forward with evidence from which it can be inferred that the defendant official knowingly and unreasonably disregarded an objectively intolerable risk of harm. *Id*. at 846.

The fact that Ward did not conduct an investigation such as Byrd believed appropriate, including somehow determining the identities of the unknown officers whom Byrd stated were threatening him, does not show that Ward was deliberately indifferent to Byrd's safety. *See Morton v. Chambers*, civil action no. 5:16cv60, 2017 WL 2874485, 2017 U.S. Dist. LEXIS 103506 (E.D.Tex., April 27, 2017), *Report adopted at* 2017 U.S. Dist. LEXIS 103276, 2017 WL 2869114 (E.D.Tex., July 5, 2017) (fact that the warden denied a prisoner's grievances does not thereby render the warden liable on a theory of failure to protect), *citing Geiger*, 404 F.3d at 373-74 *and Hailey v. Savers*, 240 F.App'x 670, 2007 U.S. App. LEXIS 17083, 2007 WL 2051983 (5th Cir., July 18, 2007). Byrd's objections are without merit.

## VI. Conclusion

The Court has conducted a careful *de novo* review of those portions of the Magistrate Judge's proposed findings and recommendations to which the Plaintiff objected. *See* 28 U.S.C. §636(b)(1) (District Judge shall "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.") Upon such *de novo* review, the Court has determined the Report of the Magistrate Judge is correct and the Plaintiff's objections are without merit. It is accordingly

**ORDERED** that the Plaintiff's objections are overruled and the Report of the Magistrate Judge (docket no. 37) is **ADOPTED** as the opinion of the District Court. It is further

**ORDERED** that the motion for summary judgment by the Defendants Ward and Harrell (docket no. 33) is **GRANTED** and the Plaintiff's claims against these Defendants is **DISMISSED WITH PREJUDICE.** It is further

**ORDERED** that the Plaintiff's claims against Lt. Black are **DISMISSED WITH PREJUDICE** for purposes of proceeding *in forma pauperis* as frivolous and for failure to state a claim upon which relief may be granted.  Finally, it is

**ORDERED** that any and all motions which may be pending in this civil action are hereby **DENIED**.

**So Ordered and Signed**
**Aug 23, 2017**

_____
Ron Clark, United States District Judge